## Commonwealth v. Minichello.

*Practice, J. P.—Summary conviction—Selling gasoline on Sunday—Act of April 22, 1794.*

1. Where the information does not aver a violation of the law of April 22. 1794, 3 Sm. Laws, 177, by the person convicted, but by another, and does not specifically aver the commission of the offence on Sunday, the information is defective and conviction by the magistrate will be set aside.

2. The Act of 1794 is to be interpreted as to the phrase "works of necessity" in a relative, not an absolute sense. Modern conditions have transformed the luxuries of the past into necessities of the present.

3. A construction consonant with contemporary thought and habit would suggest that the use of motor-vehicles is as legal on Sunday as on week-days, and that the sale of gasoline for them is necessary on Sunday.

Appeal from summary conviction. Q. S. Luzerne Co., April Sess., 1926, No. 207.

FULLER, P. J., April 9, 1926.—This is an appeal from summary conviction under the antediluvian, cerulean, sabbatical Act of April 22, 1794, 3 Sm. Laws, 177, which provides: "If any person shall do or perform any worldly employment or business whatsoever on the Lord's day, commonly called Sunday (works of necessity and charity only excepted), or shall use or practice any unlawful game, hunting, shooting, sport or diversion whatsoever on the same day, and be convicted thereof, every such person so offending shall, for every such offence, forfeit and pay four dollars, to be levied by distress."

This was borrowed from the Sunday law of Charles II, enacted in 1676, and through all the years, unchanged in jot or tittle, it has withstood the growth of civil and religious liberty.

The specific charge is selling gasoline for use by motor-vehicles on Sunday.

The appeal is based both upon technical and meritorious grounds.

The technical grounds are that the information does not aver (1) violation by the person convicted, but by another person; (2) violation on Sunday.

The information is: "That the Sinclair Oil Company, L. R. Ritts, agent, of the corner of Wyoming and Tunkhannock Avenues, West Pittston, Pa., did violate the Act of April 22, 1794, by performing worldly employment or business by making a sale of gasoline by A. Minichello, one of the attendants, at 10.15 A. M., March 21, 1926."

It is an anomaly in jurisprudence which we cannot endorse to convict A. Minichello on a charge of violation by Sinclair Oil Company, L. R. Ritts, agent.

It would also be a mark of disrespect for the Supreme Court of Pennsylvania not to hold the information fatally defective for want of specific averment that the dastardly crime was committed on Sunday.

However, while these technical grounds, without else, warrant reversal, appellant, for the sake of a great principle involved, heroically prefers to stand upon the meritorious ground that selling gasoline for use by motor-vehicles on Sunday does not violate the law.

In submitting this question the parties agree on the pertinent facts (1) that defendant, on Sunday, March 21, 1926, at a gasoline station, did perform the worldly employment or business of selling gasoline for the motor-vehicles of travelers; (2) that gasoline is necessary for the operation of those vehicles; (3) that those vehicles have modernly become a necessary mode of travel; (4) that their use for travel on Sunday, mainly but not wholly in pursuit of pleasure or relaxation, has modernly become universal even among law-abid-

ing, Sunday-respecting people, and its prohibition would be a harsh invasion of personal liberty.

Included in such Sunday use we might mention clergymen and members of their congregation attending church; physicians visiting patients; friends or relatives calling on each other; hard toilers through the week taking their families into the fresh air of the country among trees, flowers, fields and brooks to commune with nature, and sundry similar sinless instances, as well as many which might be stigmatized as sinful.

Now it could not reasonably be expected, in the maintenance of a gasoline station, that the seller of gasoline should, by investigation and adjudication, differentiate between the sinless and sinful, by selling to the former and shutting off the latter.

That would impose upon him a moral responsibility which he could not sustain and which society would not sanction.

He must treat alike, as the Divine Ruler of the universe treats alike, now, if not later, the just and the unjust; and treating all alike, he may act upon the reasonable assumption that all his customers are legitimately traveling.

Assuming, however, the legitimacy of travel by motor-vehicles on Sunday, and the necessity of gasoline for their operation, the pinch of the case lies in the query whether the need of buying gasoline on Sunday would not be obviated by foresight in buying on Saturday; but foresight depends upon circumstances and cannot be measured by any absolute standard.

Gasoline tanks differ in capacity; motor-vehicles differ in miles per gallon; supplies might run short too late for replenishing Saturday; human intelligences, in grasping present conditions and anticipating future requirements, vary.

So here, again, as on the differentiation between sinless and sinful, the seller is either saddled with unreasonable responsibility or must be absolved altogether therefrom.

We think he should be absolved and thus the "pinch" of the case be relieved.

The precise question propounded on this appeal has never, so far as we know, been decided.

The situation is really *sui generis*, but the pronounced and progressive judicial tendency under this act has been to interpret the word "necessity" in a relative, not an absolute sense.

Modern conditions have gradually transformed the luxuries of the past into the necessities of the present.

The moral consciousness of people has gradually adapted itself to a liberal conception of the subject in harmony with their common habits, and, so far as the habits are morally fit and proper *per se*, we need not worry about the religious aspect of the manifestation.

We venture to think that the vast majority, even of good church people, who own motor-vehicles, are not conscious of any moral depravity when they operate, as most of them do operate, on Sunday, and would resent any restriction upon that privilege.

We would only expect a different conception in the pedestrian who always walks from preference or poverty, or the prudent person who stands in fear of crowded roads on Sunday.

Our conclusion is not intended to impugn the Act of 1794 or the immortal Fourth Commandment, upon which it is impregnably predicated.

We do not cast upon it the stereotyped slur of being a "Blue Law" and antique, for many modern laws are bluer, but in order to maintain its respect-

ability and save it from repeal, we must employ a construction consonant with common contemporaneous thought and habit.

The sum of the matter is that the use of motor-vehicles is legitimate on Sundays as on week-days, and that the sale of gasoline is necessary for such use.

However, we formally reverse the conviction only on the technical grounds above mentioned, allowing our conclusion on the merits to stand as *obiter dictum.*

From Frank P. Slattery, Wilkes-Barre, Pa.